UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| BRANDI FUNKHOUSER, ADMINISTRATOR of the ESTATE OF KACEY HORN, <br><br> Plaintiff, <br><br> v. <br><br> CAYLYN ARBORGAST, <br><br> CAROLINE S. BILL, MD, <br><br> KAITLYN BROWN, <br><br> SIMON JILG, BSW, <br><br> MICHELLE ROLAND, RN <br><br> EUGENE FORIS SIMOPOULOS, MD, <br><br> CHRISTINE WALKER, LPN, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.: 5:22cv00056 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff, Brandi Funkhouser ("Plaintiff"), as Administrator of the Estate of Kacey D. Horn (the "Estate"), by counsel, hereby moves this honorable Court for judgment against Defendants. In support of her Complaint, Plaintiff states as follows:

## INTRODUCTION

1. This Complaint asserts claims pursuant to 42 U.S.C. § 1983, as well as claims pursuant to Virginia's wrongful death statute, regarding the death of Kacey D. Horn ("Ms. Horn").

2. Ms. Horn is survived by statutory beneficiaries under Virginia's wrongful death statute (Virginia Code § 8.01-50 and § 8.01-53).

1

3. This Complaint details violations of the Fourteenth Amendment of the United States Constitution by Defendants, jointly and severally, occurring in the Rappahannock, Shenandoah, and Warren County Regional Jail ("RSW") and Western State Hospital ("Western State").

4. This Complaint further details gross negligence by the Defendants, all of whom are responsible, jointly and severally, for gross negligence under Virginia state law resulting in the death of Ms. Horn.

## JURISDICTION

5. This Court has federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, over Plaintiff's 42 U.S.C. § 1983 claims.

6. This Court has jurisdiction over these claims as they arise under the United States Constitution and have been brought before this Court pursuant to 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over the related state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the alleged claims arising under Virginia law are so related as to form part of the same case or controversy arising under Plaintiff's 42 U.S.C. § 1983 claims.

## VENUE

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, specifically in Staunton, VA, and Warren County, VA.

9. Assignment to the Harrisonburg Division of the Western District of Virginia is proper pursuant to Western District of Virginia Local Rule 2(a)(5) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this division.

**PARTIES**

10. Plaintiff is a citizen of the United States and the Commonwealth of Virginia. She is the Administrator of the Estate of Kacey Horn, deceased. Plaintiff was qualified as Administrator of the Estate of Kacey Dawn Horn by the Shenandoah County Circuit Court on April 4, 2022. See Ex. A.

11. Plaintiff brings this action in her capacity as the qualified personal representative of the Estate of Kacey Horn.[1]

12. At the time of her death, Kacey Horn was a 28-year-old citizen of the United States and the Commonwealth of Virginia. Ms. Horn died on March 1, 2022 in Warren County, Virginia, as a result of the wrongful and unconstitutional acts of Defendants. At the time of her death, she was confined as a pre-trial detainee at RSW.

13. Defendant Caroline S. Bill, MD was the Attending Psychiatrist at Western State assigned to Ms. Horn's care and treatment.

14. Defendant Simon Jilg was a social worker at Western State assigned to Ms. Horn's care and treatment.

15. Defendant Eugene Foris Simopoulos, MD was a psychiatrist at Western State assigned to Ms. Horn's care and treatment. Defendant Simopoulos wrote comprehensive treatment plans for Ms. Horn and prescribed medications to her.

---

[1] The Virginia Code defines "personal representative" as "the executor under a will or the administrator of the estate of a decedent." Va. Code § 64.2-100.

16. At all relevant times, Defendants Bill, Jilg, and Simopoulos were employees of Western State (collectively referred to as the "Western State Defendants"). They each worked as a mental health care providers in their interactions with Ms. Horn.

17. Upon information and belief, Defendant Caylyn Arborgast was a liaison at the Northwestern Community Services Board ("NWCSB") responsible for coordinating Ms. Horn's admission to and discharge from Western State. Defendant Arborgast worked as a mental health care provider in her interactions with Ms. Horn.

18. Kaitlyn Brown was a member of the medical staff at RSW responsible for Ms. Horn's care and treatment prior to her admission to and following her discharge from Western State.

19. Michelle Roland, RN was a member of the medical staff at RSW responsible for Ms. Horn's care and treatment prior to her admission to and following her discharge from Western State.

20. Christine Walker, LPN was a member of the clinical staff at RSW responsible for Ms. Horn's care and treatment prior to her admission to and following her discharge from Western State.

21. Defendants Brown, Roland, and Walker were employees of RSW (collectively referred to as the "RSW Defendants"). They each worked as mental health care providers in their interactions with Ms. Horn.

22. Collectively, the Western State Defendants, the RSW Defendants, and Defendant Arborgast failed to provide necessary, adequate, and timely attention in response to Ms. Horn's mental health needs. Through action and inaction, Defendants failed to prevent and directly caused

Ms. Horn's fatal injuries through their gross negligence and deliberate indifference to human life, in violation of Ms. Horn's constitutional rights.

**FACTS**

23. Ms. Horn was born on December 6, 1993. She is the daughter of the Plaintiff, Brandi M. Funkhouser.

24. Ms. Horn was incarcerated at RSW beginning on February 14, 2022. At that time, an "Initial Health Screening" was performed by Defendant Walker.

25. Pursuant to that screening, Ms. Horn was placed on the facility's opiate withdrawal protocol because she tested positive for methamphetamines, amphetamines, and fentanyl. She appeared to act normally for the first couple of days of her incarceration.

26. During her initial screening, Ms. Horn further indicated that she had bipolar disorder, that she had been under the care of a mental health professional, and that she had attempted suicide by "[h]anging several months ago."

27. On February 16, 2022, Ms. Horn was found with a sheet tied around her neck kneeling in front of her cell door. She had notable red marks around her neck. She was noted to be having a seizure, and her pulse was weak. EMS was called due to "seizure and suicide attempt." Ms. Horn stated she "did not want to be here anymore."

28. Ms. Horn was taken to the hospital and returned with "no new orders." She stated, "I want to kill myself, are you sending me to Western State?"

29. Later on February 16, Ms. Horn was found sticking her fingers down her throat to induce vomiting. She stated, "I want to drowned [*sic*] myself in it."

30. During the morning of February 17, 2022, Ms. Horn was observed wrapping a suicide smock around her neck. Later, she was found apparently unconscious and ammonia

5

inhalants were used to rouse her. After she was roused she stated she "felt bad," but then induced vomiting in an attempt to regurgitate medications that had been given to her. She was observed urinating on herself. She was then observed "yelling and screaming" before 2 mg Ativan were administered intramuscularly at 0910 hours.

31. Initially, the Ativan was effective and Ms. Horn was observed "laying down and quiet," but by 1035 hours a medical emergency was called because Ms. Horn "stuck her head in the toilet and tried to drowned [*sic*] herself." Consequently, she was placed back in intake in a "dry cell."

32. As a result of her attempts to self-harm, Ms. Horn was found to meet criteria for a Temporary Detention Order and was sent from RSW to Western State Hospital pursuant to the TDO on the afternoon of February 17, 2022. Upon her admission, Ms. Horn was COVID positive and was noted to have a history of schizophrenia, pseudo seizures, and severe substance abuse disorder.

33. Upon her admission to Western State, Ms. Horn had numerous risk factors for suicide and was assessed as high risk. Ms. Horn reported that she was sexually abused as a child, had a history of using heroin to cope with her suicidal ideation, and had attempted suicide on three occasions while she was incarcerated in 2021. Ms. Horn had also attempted suicide by hanging several months prior to her arrest.

34. During her stay at Western State, Ms. Horn reported that she continued to experience daily suicidal ideation. She told medical staff she thought about killing herself on a daily basis and that she experienced command hallucinations from her childhood friend "Sally," who told her to hurt herself and others.

6

35. On February 18, Ms. Horn initially reported that her mood way "okay" and engaged in brief conversation with medical staff. She was not able to identify any coping mechanisms beyond showering consistently.

36. Provider notes indicate that later in the day on February 18, Ms. Horn felt lightheaded in the shower, lowered herself to the floor, and then rhythmically started hitting her head on the shower wall for a brief time. Afterward, she verbally denied suicidal ideation and told providers her hallucinations had abated.

37. Nevertheless, due to her high risk for suicide, Ms. Horn was placed on a schedule where she was checked every 15 minutes for self-harm.

38. Narrative notes from Ms. Horn's stay at Western State indicate at various times she was "alert and rational," denied hallucinations, and displayed no signs of unsafe or self-injurious behavior. However, the notes also indicate that at other times Ms. Horn was uncooperative, attention and medication seeking, and anxious.

39. On February 19, Ms. Horn self-induced vomiting and experienced "pseudo seizures." She was noted to be "tense" and irritable" on February 20.

40. Provider notes from February 23, 2022, indicate Ms. Horn was "anxious, cooperative" and "**having suicidal ideation**."

41. Throughout her hospitalization, Ms. Horn was treated with various psychotropic medications, including Haldol (antipsychotic), Risperdal (antipsychotic), Ativan (sedative), and Trazodone (antidepressant). She was diagnosed primarily with borderline personality disorder and an opioid use disorder, with schizophrenia proffered as a secondary diagnosis.

42. Because Ms. Horn's suicidality was a symptom of her psychological disorders, she required monitoring and mental health treatment to prevent her from engaging in self-harm.

7

43. Despite her myriad of symptoms, the Western State Defendants planned to discharge Ms. Horn back to jail once her COVID quarantine had lifted.

44. Consequently, Ms. Horn was discharged from Western State on February 28, 2022. Her discharge notes indicate she "ha[d] convincingly contracted for safety and demonstrated the ability to maintain safety over the course of past several days."

45. Ms. Horn's treatment team recommended a follow-up with an **outpatient psychiatrist** and case manager within one month. Further, discharge documents indicate RSW staff needed to continue to follow Ms. Horn for her medical and mental health needs until she was discharged back into the community.

46. Ms. Horn's discharge was communicated to Defendants Arborgast and Brown. Upon information and belief, Defendants Arborgast and Brown were responsible for coordinating Ms. Horn's transition to and from Western State.

47. According to the transmission time stamps, providers at RSW received Ms. Horn's records via transmissions from Western State at approximately 0549 hours and 1124 hours on February 28, 2022.

48. Ms. Horn was seen at RSW after returning from Western State on February 28, 2022. Medical notes entered by Defendants Roland and Walker indicate Ms. Horn had "[n]o new medical issues" and was "to follow up with a psychiatrist and case manager within 1 month per discharge instructions."

49. A second health screening was documented by Defendant Walker upon Ms. Horn's return from Western State on February 28, 2022 at 1600 hours. The only note on that form in addition to documented vital signs is "returned from WSH **no change in medical condition**." No other information is recorded.

8

50. Notably, Ms. Horn's immediate medical condition prior to her transfer to RSW involved at least four suicide attempts in a span of approximately 36 hours (attempted to hang herself, attempted to choke herself on vomit, attempted to strangle herself with a suicide smock, and attempted to drown herself in a toilet).

51. Inexplicably, however, Ms. Horn received no additional assessment, care, or observation upon her return.

52. At 1132 hours on March 1, 2022 (the following morning), Ms. Horn was discovered unresponsive and pulseless in her cell with ligature marks around her neck as a result of hanging. Ms. Horn's Certificate of Death lists Hanging as the Immediate Cause of Death and her date and time of death as March 1, 2022 at 12:43 PM.

## Count I
### RSW Defendants
### § 1983—Deliberate Indifference to Serious Medical Needs

53. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54. Collectively, the RSW Defendants were indifferent to Ms. Horn's basic human needs upon her return from Western State, including her need for access to medical or mental health care, amounting to a violation of Ms. Horn's Fourteenth Amendment Rights.

55. Deliberate indifference under the Fourteenth Amendment occurs when an individual acts with reckless disregard to a substantial risk of harm posed by a pre-trial detainee's serious medical condition.

56. The RSW Defendants were aware that Ms. Horn suffered from serious mental health conditions that prevented her from making proper decisions to ensure her own safety upon her return from Western State.

57. In fact, the RSW Defendants noted her condition as being unchanged upon her return. Significantly, Ms. Horn's condition prior to transfer to Western State culminated in her attempting to harm herself on at least four occasions in 36 hours.

58. The RSW Defendants were tasked with following Ms. Horn for her "medical and mental health needs" following her discharge from Western State.

59. The RSW Defendants knew Ms. Horn had returned from Western State with multiple prescriptions for mental health concerns, including Risperidone (antipsychotic), Hydroxyzine (antihistamine for anxiety), and Trazodone (antidepressant and sedative).

60. By virtue of their immediate prior experiences with her, the RSW Defendants knew Ms. Horn required significant monitoring and observation based on her self-injurious behavior and suicidal ideation prior to her transition to Western State.

61. Despite their actual knowledge of Ms. Horn's risk of self-harm, each of the RSW Defendants failed to do anything upon her return from Western State to ensure that Ms. Horn's serious mental health needs were monitored or that any precautions whatsoever were in place to reduce her high risk for self-harm. Consequently, each of the RSW Defendants were deliberately indifferent to the substantial risk of harm posed by Ms. Horn's well-known mental health disorders.

62. As a result of the RSW Defendants' deliberate indifference, Ms. Horn was not seen or checked on by medical staff for a period of 19 hours, from 1600 hours on February 28, 2022, until she was found unresponsive in her cell around 1130 hours on March 1, 2022.

63. Ms. Horn was officially pronounced dead at 1243 hours on March 1, 2022. The cause of death listed on her death certificate is "Hanging."

64. The RSW Defendants' failure to monitor and respond to Ms. Horn's objectively serious medical and mental health needs, in the face of a subjectively known risk of harm, amounts to deliberate indifference to Ms. Horn's serious medical needs.

65. The RSW Defendants' deliberate indifference to Ms. Horn's obvious and serious medical needs was a direct and proximate cause of her death, insofar as Defendants' failures to monitor or observe Ms. Horn prevented mitigating the risk she would harm herself.

66. The RSW Defendants' actions and omissions constitute willful, wanton, reckless, conscious, and deliberate indifference and disregard of Ms. Horn's constitutional rights, such that Plaintiff is entitled to recover punitive damages.

67. The RSW Defendants' violations of the Fourteenth Amendment to the United States Constitution establish a cause of action pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory damages and punitive damages in the amount to be established at trial, and attorneys' fees and costs.

## Count II
### Defendant Arborgast and Western State Defendants
### State Law—Gross Negligence

68. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69. Defendant Arborgast and the Western State Defendants had duties to administer medical care and treatment to Ms. Horn in conformity with the standards of delivery of medical care and treatment in the Commonwealth of Virginia.

70. Defendant Arborgast and the Western State Defendants were aware that Ms. Horn suffered from serious mental health conditions that prevented her from making proper decisions to ensure her own safety.

71. Dr. Bill, as the attending physician at Western State working with Ms. Horn, had a special duty to ensure that her subordinates understood the suicide risks associated with Ms. Horn's symptoms. Dr. Bill had a duty to ensure that her subordinates provided Ms. Horn with the adequate medical care and accommodation to which she was entitled.

72. Dr. Bill further had a duty to create a proper and medically adequate discharge plan for addressing Ms. Horn's mental health needs following her release from Western State back to RSW. A failure to create and communicate such a plan to her subordinates at Western State and Ms. Horn's providers at RSW constitutes gross medical negligence.

73. Defendant Arborgast, as the liaison at NWCSB responsible for Ms. Horn's admission to Western State from RSW (and her release from Western State back to RSW) had a duty to create a proper and medically adequate transition plan for addressing Ms. Horn's mental health needs. A failure to create and communicate such a plan to Ms. Horn's providers at Western State and RSW constitutes gross medical negligence.

74. As a result of the gross negligence of Defendant Arborgast and the Western State Defendants, Ms. Horn was caused to be placed in a cell with inadequate surveillance and allowed to have access to materials which she later used to commit suicide.

75. The failures of the Western State Defendants to diagnose and continue to monitor Ms. Horn's symptoms despite her known and obvious risk for self-harm and to create a medically adequate discharge and transition plan caused Ms. Horn to suffer serious and unneeded pain as well as serious injuries which resulted in her death.

76. The failures of Defendant Arborgast to adequately follow up with Ms. Horn after her release from Western State and to create a medically adequate transition plan caused Ms. Horn to suffer serious and unneeded pain as well as serious injuries which resulted in her death.

77. The gross negligence of the Western State Defendants that caused Ms. Horn's death include but are not limited to:

   a. failure to continue to monitor Ms. Horn despite her known risk of self-harm;

   b. failure to diagnose Ms. Horn as imminently suicidal upon her release from Western State;

   c. failure to create a proper and medically adequate discharge plan for addressing Ms. Horn's mental health needs following her release from Western State;

   d. failure to recommend Ms. Horn be continuously monitored upon her release from Western State;

   e. failure to recommend removal of materials which are known to be used by potentially suicidal inmates for self-harm;

   f. failure to fully and properly communicate to RSW jail staff that Ms. Horn continued to need ongoing monitoring and follow-up relative to her serious mental conditions and threats/attempts of self-harm—particularly in light of her known behaviors immediately prior to her admission at Western State.

78. As a direct and proximate result of the actions and/or omissions of Defendant Arborgast and the Western State Defendants, Ms. Horn suffered severe and permanent injuries resulting in her untimely death.

79. As a direct and proximate result of the grossly negligent conduct of Defendant Arborgast and the Western State Defendants, Ms. Horn was subject to needless and unusual suffering, pain, mental anguish, and medical bills.

80. As a direct and proximate result of the grossly negligent conduct of Defendant Arborgast and the Western State Defendants, the surviving beneficiaries of Ms. Horn have suffered

and will continue to suffer sorrow, mental anguish, loss of companionship, loss of comfort and guidance, medical bills, funeral bills, loss of income and support, and other related bills and expenses.

## WRONGFUL DEATH DAMAGES

81. Ms. Horn suffered a wrongful death and brings this action pursuant to Virginia Code § 8.01-50 for damages as set forth in Virginia Code § 8.01-52. She is survived by statutory beneficiaries as set forth in Virginia Code § 8.01-53.

82. As a direct and proximate result of the negligent and grossly negligent conduct by all Defendants set forth supra, Ms. Horn's estate and her statutory beneficiaries suffered the following compensable damages:

    a. Sorrow, mental anguish, and solace;

    b. Loss of future income and services;

    c. Expenses for care, treatment, and hospitalization;

    d. Reasonable funeral expenses.

WHEREFORE, based upon the foregoing, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount in excess of FIVE MILLION DOLLARS ($5,000,000.00), for compensatory damages, together with costs incurred in the pursuit of just resolution to this matter, prejudgment and post-judgment interest, and attorneys' fees.

WHEREFORE, Plaintiff seeks such further and additional relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully filed,

**BRANDI FUNKHOUSER**
**ADMINISTRATOR of**
**the ESTATE OF KACEY HORN**

/s/
Seth R. Carroll (VSB No. 74745)
Commonwealth Law Group, LLC
3311 West Broad Street
Richmond, VA 23230
Phone: (804) 999-9999
Facsimile: (866) 238-6415
scarroll@hurtinva.com

Brewster S. Rawls (VSB No. 23604)
Rawls Law Group
211 Rocketts Way, Suite 211
Richmond, VA 23231
Phone: (804) 344-0038
brawls@rawlslawgroup.com